# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| MID-AMERICAN SUPPLY CORPORATION, § § § *Plaintiff,* § § v. § § TRUIST BANK d/b/a BB&T, § § *Defendant.* § | Civil Action No. 4:21-CV-00841 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Mid-American Supply Corporation's Motion to Join a Necessary and Proper Party and to Remand (Dkt. #49) and Plaintiff's Motion to Voluntarily Dismiss (Dkt. #54). Having considered the motions and the relevant pleadings, the Court finds that both motions should be **DENIED**.

## BACKGROUND

This case stems from a dispute regarding the control and ownership of Mid-American Supply Corporation's ("Mid-American") bank account at Truist Bank d/b/a BB&T ("Truist"). Mid-American is a Texas corporation with its principal place of business in Kansas (Dkt. #1 ¶ 8). Truist is North Carolina-chartered bank with its principal place of business in Charlotte, North Carolina (Dkt. #1 ¶ 9).

### I.    Factual Background

Mid-American is in the business of distributing industrial materials to companies in China (Dkt. #7 ¶ 6). It is headed by Xiaosha "Tom" Tian, its president, sole director, and majority shareholder (Dkt #7 ¶ 7). From the time of the company's founding in 1996 through July 2021,

Mid-American's board of directors consisted of Mr. Tian and Wei Shao Heironimus, a minority shareholder who also served as the company's secretary.

On February 22, 2016, Ms. Heironimus opened a business checking account (the "Account") at Truist (Dkt. #7 ¶ 8).  In the process of opening the Account, Ms. Heironimus identified herself as Mid-American's president and signed a resolution stating that she was authorized to open the account and transact business on Mid-American's behalf.

Plaintiff alleges that Ms. Heironimus was not authorized to open the Account and that Mid-American was unaware that she was depositing company funds into the Account (Dkt. #7 ¶ 8). According to Mid-American, it did not learn of the Account until May 2020, at which point it informed Truist that Ms. Heironimus was not authorized to act on behalf of Mid-American (Dkt. #7 ¶ 16).

In October 2019, Ms. Heironimus initiated a derivative action against Mr. Tian in the 162nd Judicial District Court in Dallas County, Texas, alleging that he had misappropriated Mid-American's funds for his personal gain. *See generally Wei Shao Heironimus, derivatively on behalf of Mid-American Supply Corp., and individually v. Xiaosha Tian*, No. 19-16583 (162nd Dist. Ct., Dallas County, Tex. Oct. 11, 2019).  In the derivative action, Ms. Heironimus asserted causes of action against Mr. Tian for breach of fiduciary duty, conversion, violations of the Texas Theft Liability Act, and money had and received.  The trial court granted a plea to the jurisdiction and dismissed the case.  On August 1, 2022, the Court of Appeals for the Fifth District of Texas reversed the trial court's order granting Mr. Tian's plea to the jurisdiction and remanded the case to the trial court for further proceedings. *Heironimus on Behalf of Mid-Am. Supply Corp. v. Tian*, No. 05-21-00174-CV, 2022 WL 3030735, at *5 (Tex. App.—Dallas Aug. 1, 2022, no pet.) (mem. op.).

On July 7, 2021, Mid-American held a special meeting to remove Ms. Heironimus as a director and appointed Mr. Tian as the company's sole director (Dkt. #7 ¶¶ 11–12). As the sole director of Mid-American, Mr. Tian immediately stripped Ms. Heironimus of all positions that she held with the company. On July 23, 2021, Mid-American terminated Ms. Heironimus's employment and sent her a notice of termination, which directed her to refrain from acting on behalf of the company and to return all company property.

## II.     Procedural History

Two months after it terminated Ms. Heironimus, Mid-American sued Truist in the 380th Judicial District Court in Collin County, Texas. *Mid-American Supply Corp. v. Truist Bank d/b/a BB&T*, No. 380-05170-2021 (380th Dist. Ct., Collin County, Tex. Sep. 13, 2021). In its state court petition, Mid-American alleges that, upon learning of the Account in May 2020, it informed Truist that Ms. Heironimus lacked authority to make or approve any transactions and directed the bank to freeze the account and to make no further transactions without Mr. Tian's approval. According to Mid-American, Truist failed to comply with these directions and did not remove Ms. Heironimus from the Account or prevent her from making further transactions. Mid-American's state court petition alleged three causes of action: (1) breach of depository agreement; (2) declaratory judgment; and (3) violations of § 4.401 of the Texas Business and Commercial Code.

On October 19, 2021, Truist removed the case to this Court based on diversity jurisdiction (Dkt. #1). On November 19, 2021, Mid-American filed an amended complaint (Dkt. #7). Shortly after amending its complaint, on November 23, 2021, Mid-American served its initial disclosures as mandated by Federal Rule of Civil Procedure 19, in which it identified Ms. Heironimus as a "potential, but not a required, party" (Dkt. #51, Exhibit A). The parties then proceeded to conduct

fact discovery, and, in May 2022, both parties filed motions for summary judgment, which remain pending before the Court (Dkt. #20; Dkt. #23).

On November 2, 2022—over one year after Mid-American removed this case from state court—Mid-American filed its Motion to Join a Necessary and Proper Party and to Remand (Dkt. #51). Through that motion, Mid-American seeks to add Ms. Heironimus, a Texas resident, as a defendant in this case, thereby destroying complete diversity of citizenship between the parties. Truist filed its response on November 23, 2022 (Dkt. #51) and Mid-American replied on November 30, 2022 (Dkt. #52). On December 8, 2022, Mid-American filed its Motion to Voluntarily Dismiss (Dkt. #54). Truist filed its response on December 12, 2022 (Dkt. #57).

## LEGAL STANDARD

I. **Motion for Leave to Amend**[1]

When a plaintiff seeks leave to amend its complaint which, if granted, would destroy diversity jurisdiction, the request for leave to amend is not governed by Federal Rule of Civil Procedure 15(a), which applies to amendments generally, but rather by 28 U.S.C. § 1447(e). *Denson v. BeavEx, Inc.*, 612 F. App'x 754, 759 (5th Cir. 2015). Pursuant to § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State

---

[1] Although Mid-American styles its motion as a Motion to Join a Necessary and Proper Party and to Remand, it is more properly construed as a motion for leave to file an amended complaint. Mid-American seeks to add Ms. Heironimus to this case, thereby destroying diversity jurisdiction and necessitating a remand. "In the Fifth Circuit, because of the serious implications of adding a non-diverse party to the litigation, 'it is understood that the propriety of post-removal joinder in an amended pleading such that it would destroy diversity jurisdiction is *always* a question to be presented to the district court in the form of a motion for leave to file an amended pleading.'" *See, e.g., Croswait v. Wilmington Sav. Fund Soc'y FSB*, No. 4:19-CV-00305, 2019 WL 8755074, at *7 (E.D. Tex. Dec. 13, 2019), *report and recommendation adopted,* No. 4:19-CV-00305, 2020 WL 1242449 (E.D. Tex. Mar. 16, 2020) (citing *Cobb v. Delta Exps., Inc.*, 186 F.3d 675 (5th Cir. 1999)) (emphasis in original). After filing its motion to remand, Mid-American attempted to file a Motion to Amend, but the Court rejected this filing as deficient (Dkt. #53). To date, Mid-American has not corrected this deficiency. Nonetheless, the Court will construe Plaintiff's Motion to Join a Necessary and Proper Party and to Remand as a motion for leave to amend its complaint.

4

court." 28 U.S.C. § 1447(e). The decision to grant leave to amend to add parties that will destroy diversity jurisdiction is within the district court's sound discretion. *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005). That said, a court must scrutinize a proposed amended pleading naming new, nondiverse defendants in a removed case "more closely than an ordinary amendment." *Moore v. Mans*, 732 F.3d 454, 456 (5th Cir. 2013).

## II. Voluntary Dismissal

The decision to dismiss an action rests within the sound discretion of the district court. *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985). Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that, after a defendant files an answer or a motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." FED. R. CIV. P. 41(a)(2). The primary purpose of Rule 41(a)(2) is to "prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Manshack v. SW. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990). Voluntary dismissals should be freely granted unless "the non-moving party will suffer some plain legal prejudice." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002). "If a defendant will suffer some cognizable prejudice greater than the mere prospect of a second lawsuit, voluntary dismissal without prejudice should be denied." *Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs.*, Inc., 903 F.2d 352, 360 (5th Cir. 1990).

## ANALYSIS

## I. Mid-American's Motion for Leave to Amend

Mid-American seeks leave to join Ms. Heironimus, a Texas citizen, as a defendant. Mid-American seeks this joinder—which would destroy the complete diversity of citizenship between the parties and necessitate remand—because it contends that it is unable to secure complete relief

5

without Ms. Heironimus's participation in this case (Dkt. # 49 at p. 2). When a plaintiff seeks to amend its complaint to add a non-diverse party after the case has been removed, the "district court must apply a higher level of scrutiny than required under [Federal Rule of Civil Procedure 15(a)]." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 185 (5th Cir. 2018). Thus, courts have concluded that an amendment that that would deprive a federal court of subject matter jurisdiction must be analyzed under 28 U.S.C. § 1447(e). *See, e.g.*, *Shargian v. Shargian*, 591 F. Supp. 3d 100, 107 (E.D. La. 2022) (collecting cases). And, when an amendment would destroy jurisdiction, "most authorities agree that leave should be denied unless there exist strong equities in its favor." *Croswait*, 2019 WL 8755074, at *6 (quoting *Whitworth v. TNT Bestway Transp. Inc.*, 914 F. Supp. 1434, 1435 (E.D. Tex. 1996)).

### A.     The *Hensgens* Factors

The Fifth Circuit has recognized that proposed amendments seeking to add a non-diverse defendant create a tension between "the competing interests" of avoiding "parallel federal/state proceedings" and the diverse defendant's "interest in retaining the federal forum." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). As a means of balancing these interests and "scrutiniz[ing]" proposed amendments that would destroy diversity, the Fifth Circuit has prescribed several factors that district courts should consider: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in amending; (3) whether the plaintiff will be significantly injured if the amendment is not permitted; and (4) any other factors bearing on the equities. *Id.* When applied to this case, the *Hensgens* factors weighs against granting Mid-American leave to amend its complaint.

#### 1.     The First *Hensgens* Factor

The first *Hensgens* factor, which seeks to determine the extent to which the purpose of the

plaintiff's proposed amendment is to defeat federal jurisdiction, weighs in favor of denying Mid-American's motion for leave to amend. *Id.* In applying this factor, courts have recognized that a plaintiff's failure to join non-diverse defendants whose identities the plaintiff knew before removal suggests that the purpose of the proposed amendment is to destroy diversity jurisdiction. *Sharigan*, 591 F. Supp. 3d at 107–08; *see also Anzures v. Prologis Texas I LLC*, 886 F. Supp. 2d 555, 562 (W.D. Tex. 2012) ("When district courts in the Fifth Circuit analyze the first *Hensgens* factor, they consider whether the plaintiffs knew or should have known the identity of the nondiverse defendant when the state court complaint was filed.")) (internal quotations omitted).

Here, the record makes clear that Mid-American was aware of Ms. Heironimus's identity at the time that it filed its state court petition. As Truist points outs, Mid-American identified Ms. Heironimus and her alleged role in this case in its state court petition, and that description is largely unchanged in Mid-American's live complaint (Dkt. #3 ¶¶ 8–19; Dkt. #7 ¶¶ 6–23). Moreover, one month after Truist removed this case, Mid-American identified Ms. Heironimus as a "potential, but not a required, party" in its initial disclosures (Dkt. #51, Exhibit A).

In fact, it appears that Mid-American was aware of Ms. Heironimus and her role in the events giving rise to this case well before it filed its state court complaint. After all, Mid-American was already involved in litigation with Ms. Heironimus at the time that it filed its state court petition against Truist in September 2021 (Dkt. #3 ¶ 10).[2] Therefore, the Court finds that Mid-American knew of Ms. Heironimus's identity at the time that it filed this case.

Ultimately, Mid-American offers no compelling justification for its request to join Ms.

---

[2] At the time that Mid-American brought its case against Truist, Ms. Heironimus's derivative action against Mr. Tian was pending before the Court of Appeals for the Fifth District of Texas. As noted above, the Court of Appeals ultimately reversed the trial court's order granting Mr. Tian's plea to the jurisdiction. *Heironimus on Behalf of Mid-Am. Supply Corp.*, 2022 WL 3030735, at *5. Subsequently, that case was remanded to the trial court for further proceedings, and it remains active. *Wei Shao Heironimus, derivatively on behalf of Mid-American Supply Corp., and individually v. Xiaosha Tian*, No. 19-16583 (162nd Dist. Ct., Dallas County, Tex. Oct. 11, 2019).

Heironimus—whose identity it has known since at least 2019—as a party to this case over one year after removal. This indicates to the Court that the true purpose of Mid-American's proposed amendment is to destroy the Court's diversity jurisdiction. *Croswait*, 2019 WL 8755074, at *6. Consequently, the first *Hensgens* factor weighs against permitting Mid-American leave to amend its complaint.

### 2. The Second *Hensgens* Factor

The second *Hensgens* factor, which considers whether the plaintiff has been dilatory in requesting to amend its complaint, also weighs against Mid-American. *See Hensgens*, 833 F.2d at 1182. In analyzing the second *Hensgens* factor, courts consider the amount of time elapsed between the plaintiff's motion for leave to amend and the filing of the original state court petition and subsequent notice of removal. *Sharigan*, 591 F. Supp. 3d at 113. Courts also consider the procedural posture of the case, paying particular attention to whether trial or pre-trial dates were scheduled, and whether any "significant activity beyond the pleadings has occurred." *Am. Legend Homes v. Navigators Specialty Ins. Co.*, No. 4:19-CV-00035, 2019 WL 5721634, at *3 (E.D. Tex. Nov. 5, 2019).

In this case, Mid-American waited nearly thirteen months from the date of removal to seek leave to amend its complaint to add Ms. Heironimus as a party. Mid-American filed its state court petition on September 13, 2021 (Dkt. #3). Truist removed the case to this Court on October 19, 2021 (Dkt. #1). Over one year later, on November 3, 2022, Mid-American sought to add Ms. Heironimus as a party and to remand the case to state court (Dkt. #49). As noted above, Mid-American was aware of Ms. Heironimus and her role in this case well before filing its state court petition. When faced with similar facts, courts have found delays in making a request to amend of even a few months to be dilatory. *Wren v. Chesapeake Energy Corp.*, No. 4:15-CV-1847,

2016 WL 29347, at *3 (S.D. Tex. Jan. 4, 2016) (holding that request to amend complaint filed two months after state court petition and one month after removal was dilatory where plaintiff knew of the non-diverse party before filing its state court petition); *Wein v. Liberty Lloyds of Texas Ins. Co.*, No. 1:15-CV-00019, 2015 WL 1275915, at *6 (W.D. Tex. Mar. 19, 2015) (noting that "courts have found plaintiffs acted in a dilatory fashion by failing to sue a non-diverse defendant in state court although the non-diverse defendant's role in the case was known at that time").

Moreover, "significant activity beyond the pleading" has occurred in this case. *Am. Legend Homes*, 2019 WL 5721634, at *3. At the time that Mid-American requested leave to amend its complaint, both parties had already filed motions for summary judgment (Dkt. #20; Dkt. #23), and the Court had entered a scheduling order and set a pre-trial conference date (Dkt. #50). Given the late stage of this case, the Court finds that Mid-American was dilatory in filing its motion for leave to amend its complaint. Thus, the second *Hensgens* factor also weighs against permitting Mid-American leave to amend its complaint.

### 3. The Third *Hensgens* Factor

The third *Hensgens* factor, which assesses whether the plaintiff will be significantly injured by the denial of the amendment, weighs against Mid-American. "In weighing whether a plaintiff would be significantly injured, courts consider whether a plaintiff can be afforded complete relief without the amendment, and whether plaintiff 'could recover against the proposed nondiverse defendant.'" *Sharigan*, 591 F. Supp. 3d at 114 (quoting *Gallegos v. Safeco Ins. Co. of Ind.*, No. 4:09-CV-02777, 2009 WL 4730570, at *5 (S.D. Tex. Dec. 7, 2009)) (cleaned up). Courts have found that there is no prejudice to the plaintiff when the current defendant would be able to satisfy a future judgment. *Anzures*, 886 F. Supp. 2d at 565.

Here, Mid-American argues that it cannot obtain complete relief without the involvement

of Ms. Heironimus (Dkt. #49 at p. 1). According to Mid-American, "if Truist prevails in its unwavering defense against Mid-American's claim to recover funds that it wrongfully allowed Heironimus to remove from Mid-American's account, Mid-American will receive no relief" (Dkt. #52 at p. 2). But, beyond this conclusory argument, Mid-American offers no indication that Truist cannot satisfy any future judgment against it. Ultimately, Mid-American seeks damages stemming from Truist's alleged violations of § 4.401 of the Texas Business and Commercial Code and a declaratory judgment stating that Mid-American controls the Account (Dkt. #7 at p. 8). There is no indication that Ms. Heironimus's presence in this case is necessary for Mid-American to obtain that relief. Nor is there any indication that any existing party will be subject to a "substantial risk of double, multiple, or otherwise inconsistent obligations" if Ms. Heironimus is not joined as a defendant. *See Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 629 (5th Cir. 2009) (in the in the context of joinder, a necessary party is one whose absence would "leave an existing subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations"). Moreover, the Court's refusal to permit the joinder of Ms. Heironimus will not preclude Mid-American from pursuing any potential claims against Ms. Heironimus in state court. *G & C Land v. Farmland Mgmt. Servs.*, 587 F. App'x 99, 103–04 (5th Cir. 2014) (upholding the district court's decision to deny plaintiff leave to amend its complaint, noting that the district court "found that [plaintiff] could pursue its claims against the non-diverse defendants in state courts"). Accordingly, the third *Hensgens* factor weighs against permitting Mid-American leave to amend its complaint.

    **4.**    **The Fourth *Hensgens* Factor**

Finally, under the fourth *Hensgens* factor, the Court must consider any other factors that may bear on the equities of allowing plaintiff's amendment. *Hensgens*, 833 F.2d at 1182. Neither

party raises any further equitable considerations, and the Court discerns none.  The Court thus finds that the fourth *Hensgens* factor is neutral.

In sum, three *Hensgens* factors weigh against granting Mid-American leave to amend its complaint and one factor is neutral.  The Court specifically finds that Mid-American's proposed amendment was primarily filed to defeat diversity and that Mid-American will not be prejudiced by the denial of its motion for leave to amend.  "When an amendment would destroy jurisdiction, most authorities agree that leave should be denied unless there exist strong equities in its favor." *Croswait*, 2019 WL 8755074, at *6.  Here, there are no equitable considerations strong enough to weigh in favor of granting Mid-American leave to amend its complaint.  Thus, construing Mid-American's Motion to Join a Necessary and Proper Party and to Remand (Dkt. #49) as a motion for leave to file an amended complaint, the Court denies Mid-American leave to amend its complaint.

## II.    Mid-American's Motion for Voluntary Dismissal

Mid-American also asks the Court to dismiss this case without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure (Dkt. #54 at pp. 2–3).  Rule 41(a)(2) provides that, after a defendant files an answer or a motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." FED. R. CIV. P. 41(a)(2).  "Voluntary dismissal under Rule 41(a)(2) is a matter within the sound discretion of the district court . . . ." *Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1274–75 (5th Cir. 1990).  That said, motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some "plain legal prejudice." *Elbaor*, 279 F.3d at 317.

Although the Fifth Circuit has not explicitly defined "plain legal prejudice" in this context, it has provided district courts with guidance for considering motions for voluntary dismissal.  For

11

instance, "[w]here the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal." *Hartford Accident & Indem. Co.*, 903 F.2d at 360. Further, a non-moving party suffers plain legal prejudice when a plaintiff files a motion for voluntary dismissal to avoid an imminent adverse result on summary judgment. *In re FEMA Trailer Formaldahyde Prod. Liab. Litig.*, 628 F.3d 157, 162 (5th Cir. 2010). In contrast, the mere fact that "additional expenses will be incurred in relitigating issues in another forum will not generally support a finding of 'plain legal prejudice' and a denial of a Rule 41(a)(2) motion to dismiss." *Elbaor*, 279 F.3d at 317 n.3.

The Fifth Circuit has made clear that, in evaluating a motion for voluntary dismissal, district courts should consider the stage of the case at which the motion was made. *Hartford Accident & Indem. Co.*, 903 F.2d at 360. In *Hartford*, the Fifth Circuit affirmed a district court's finding that the defendants would suffer plain legal prejudice in the event of a voluntary dismissal because they "expended significant time and effort litigating the action and [the plaintiff] was far less than prompt in seeking voluntary dismissal." *Id.* at 361. In reaching this conclusion, the Fifth Circuit emphasized the fact that the plaintiff moved to dismiss the action without prejudice nearly ten months after the action was removed to federal court, after hearings had been conducted, after significant discovery was conducted, and after the defendants were granted summary judgment. *Id.*

Truist argues that, like the defendants in *Hartford*, it would suffer plain legal prejudice because it has expended significant time and effort litigating this case and Mid-American has been less than prompt in seeking voluntary dismissal (Dkt. #57 at p. 3). The Court agrees. As Truist points out, Mid-American moved to dismiss this case without prejudice more than one year after removal, and, in that time, Truist has participated in extensive discovery and filed a motion for

summary judgment (Dkt. #57 at p. 3).  Moreover, Mid-American makes no attempt to explain the reason that it is just now seeking dismissal of this case after a year of litigation.

Ultimately, because Truist has expended significant time and effort litigating this case and Mid-American has been less than prompt in seeking voluntary dismissal, the Court finds that Truist would suffer plain legal prejudice if the Court were to grant Mid-American's motion to voluntarily dismiss.  *Hartford Accident & Indem. Co.*, 903 F.2d at 361.  Therefore, the Court denies Mid-American's Motion to Voluntarily Dismiss (Dkt. #54).

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Join a Necessary and Proper Party and to Remand (Dkt. #49) is hereby **DENIED**.

It is further **ORDERED** that Plaintiff's Motion to Voluntarily Dismiss (Dkt. #54) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 3rd day of February, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE