# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MID-AMERICAN SUPPLY CORPORATION, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 4:21-CV-00841 |
| v. | § § | Judge Mazzant |
| TRUIST BANK d/b/a BB&T, | § § § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Truist Bank d/b/a BB&T's Motion for Summary Judgment (Dkt. #20) and Plaintiff Mid-American Supply Corporation's Motion for Partial Summary Judgment (Dkt. #23). Having considered the motions and the relevant pleadings, the Court finds that Defendant's Motion for Summary Judgment (Dkt. #20) should be **GRANTED** and that Plaintiff's Motion for Partial Summary Judgment (Dkt. #23) should be **DENIED**.

### BACKGROUND

This case stems from a dispute regarding the control and ownership of Mid-American Supply Corporation's ("Mid-American") bank account at Truist Bank d/b/a BB&T ("Truist").

**I.      Mid-American**

Mid-American is in the business of distributing industrial materials to companies in China (Dkt. #7 ¶ 6). It is currently headed by Xiaosha "Tom" Tian, its president and majority shareholder (Dkt #23 ¶ 20). Although Mid-American was initially founded in Kansas in 1996, it filed its certificate of formation as a Texas corporation on December 28, 2011 (Dkt. #20, Exhibit 11 at p. 15). In its certificate of formation, Mid-American indicated that its governing authority was a

two-person board of directors consisting of Mr. Tian and Wei Shao Heironimus, who, at that point, had served as Mid-American's corporate secretary for nearly fifteen years (Dkt. #20, Exhibit 11 at p. 15).  Along with its certificate of formation, Mid-American also filed a unanimous written consent, signed by Mr. Tian, as required by the Texas Business Organization Code (Dkt. #20, Exhibit 11 at p. 25).  In its unanimous written consent, Mid-American identified Mr. Tian and Ms. Heironimus as the company's officers (Dkt. #20, Exhibit 11 at p. 26).  As such, both Mr. Tian and Ms. Heironimus had the power to "to open one or more bank accounts in [Mid-American's] name" (Dkt. #20, Exhibit 11 at p. 26).  Further, both Mr. Tian and Ms. Heironimus had express authority to "execute any form of required resolution necessary to open such bank accounts" (Dkt. #20, Exhibit 11 at p. 26).

## II.     The Account

On February 22, 2016, Ms. Heironimus opened a business checking account at Truist on behalf of Mid-American (the "Account") (Dkt. #26 ¶ 2).  Ms. Heironimus signed a resolution affirming that she was authorized to open the Account and to transact business on Mid-American's behalf (Dkt. #20, Exhibit 2).  Ms. Heironimus signed the resolution as Mid-American's secretary and identified herself as Mid-American's designated representative with respect to the Account (Dkt. #20, Exhibit 2).  Ms. Heironimus also signed a signature card, which identified her as Mid-American's president and indicated that she was the company's sole designated representative (Dkt. #20, Exhibit 3).

Under the Commercial Bank Services Agreement ("CBSA"), which governs the Account, Truist agreed to provide Mid-American with regular account statements (Dkt. #20, Exhibit 7 at pp. 7–8). After the creation of the Account, Truist made account statements available online and regularly sent them to an address designated by Ms. Heironimus (Dkt. #20, Exhibit 4).  Ms.

Heironimus sent copies of those statements to Mr. Tian on at least one occasion (Dkt. #20, Exhibit 10).

In relevant part, the CBSA also provides that, upon notification of a dispute concerning the Account, Truist had discretion to:

> (i) continue to rely on the signature cards, resolutions, and other account documents in our possession; (ii) freeze all or any portion of the funds we deem appropriate until the dispute is resolved; (iii) pay the funds into an appropriate court of law or equity for resolution; (iv) honor the competing claim upon receipt of evidence we deem satisfactory to justify such claim; or (v) close the account and pay any proceeds to: (a) all who have or claim an interest in the account; or (b) the account owner(s) as indicated in our records. In addition, we may, at our option, commence a lawsuit to determine the ownership of your account.

(Dkt. #20, Exhibit 7 at p. 12).

### III.     Ongoing Disputes Over Control of Mid-American's Accounts

In the fall of 2019, Ms. Heironimus initiated a series of individual and derivative actions against Mr. Tian, alleging that Mr. Tian was improperly seizing control of Mid-American's accounts to abscond to China with company funds. Ms. Heironimus filed the first of these cases on October 11, 2019, in which she asserted causes of action against Mr. Tian for breach of fiduciary duty, conversion, violations of the Texas Theft Liability Act, and money had and received. *See generally Wei Shao Heironimus, derivatively on behalf of Mid-American Supply Corp., and individually v. Xiaosha Tian*, No. 19-16583 (162nd Dist. Ct., Dallas County, Tex. Oct. 11, 2019).[1] The trial court initially granted a plea to the jurisdiction and dismissed the case. On August 1, 2022, the Court of Appeals for the Fifth District of Texas reversed the trial court's order granting Mr. Tian's plea to the jurisdiction and remanded the case to the trial court for further proceedings. *Heironimus on Behalf of Mid-Am. Supply Corp. v. Tian*, No. 05-21-00174-CV, 2022 WL 3030735,

---

[1] The Court may take judicial notice of an "adjudicative fact," including public filings in other cases. FED. R. EVID. 201; *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 327 (E.D. Tex. 2021) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice.").

3

at *5 (Tex. App.—Dallas Aug. 1, 2022, no pet.) (mem. op.). That case remains ongoing.

Two years later, on October 11, 2021, Ms. Heironimus filed an additional action against Mr. Tian, both individually and derivatively, alleging that he was improperly attempting to seize control over $2 million in Mid-American funds held in another bank account. *See generally Wei Shao Heironimus, derivatively on behalf of Mid-American Supply Corp., and individually v. Xiaosha Tian and Intrust Bank, N.A.*, No. 21-14920 (162nd Dist. Ct., Dallas County, Tex. Oct. 11, 2021). That case also remains ongoing.

Amid these disputes, on June 26, 2020, Mid-American sent a letter to Truist stating that "unless specifically approved by [Mr. Tian] in writing," Ms. Heironimus was not authorized to make payments or transfer funds from the Account (Dkt. #26, Exhibit 2 at pp. 4–7). Truist responded to this letter by directing Mid-American to provide a notarized client authorization (Dkt. #26, Exhibit 2 at pp. 14–15). Mid-American returned a notarized form on July 28, 2020 (Dkt. #26, Exhibit 2 at pp. 16–18).

Over one year later, on July 7, 2021, Mid-American held a special meeting to remove Ms. Heironimus as a director and appointed Mr. Tian as the company's sole director (Dkt. #26, Exhibit 1 at pp. 5–8). As the sole director of Mid-American, Mr. Tian immediately signed a new written consent removing Ms. Heironimus as an officer of the company (Dkt. #26, Exhibit 1 at pp. 10–25). On July 23, 2021, Mid-American terminated Ms. Heironimus's employment and sent her a notice of termination, which directed her to refrain from acting on behalf of the company and to return all company property (Dkt. #26, Exhibit 1 at pp. 27–28).

On August 23, 2021, Mid-American notified Truist of Ms. Heironimus's termination and directed Truist to freeze the account and to recognize that Mr. Tian is the sole person authorized by Mid-American to make or approve payments from the Account (Dkt. #26, Exhibit 3 at pp. 4–

5).  Truist elected to freeze the account pursuant to the CBSA (Dkt. #20, Exhibit 1 ¶ 11).  No transactions occurred in the Account after Mid-American removed Ms. Heironimus as an officer in July 2021 (Dkt. #20, Exhibit 5 at pp. 78–87).

### IV.  Procedural History

On September 13, 2021, Mid-American sued Truist in the 380th Judicial District Court in Collin County, Texas.  *Mid-American Supply Corp. v. Truist Bank d/b/a BB&T*, No. 380-05170-2021 (380th Dist. Ct., Collin County, Tex. Sep. 13, 2021).  On October 19, 2021, Truist removed the case to this Court based on diversity jurisdiction (Dkt. #1).  On November 19, 2021, Mid-American filed an amended complaint (Dkt. #7).  In its amended complaint, Mid-American alleges a claim under § 4.401 of the Texas Business and Commerce Code and seeks a declaratory judgment stating that it is a customer under the CBSA and that Mr. Tian is the only agent authorized to act on behalf of Mid-American with respect to the Account (Dkt. #7 ¶¶ 26–36).

On May 11, 2022, Truist filed its motion for summary judgment (Dkt. #20).  Mid-American filed its response on June 16, 2022 (Dkt. #26).  On May 13, 2022, Mid-American filed its motion for partial summary judgment (Dkt. #23).  Truist filed its response on June 20, 2022 (Dkt. #27).  Mid-American replied on June 27, 2022 (Dkt. #30).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*,

477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all the evidence

but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

In its motion for summary judgment, Truist argues that: (1) Mid-American's § 4.401 claim fails as a matter of law because the transactions challenged by Mid-American were "properly payable" within the meaning of the statute and because the § 4.401 claim is time barred and (2) that Mid-American's request for declaratory relief necessarily fails as a matter of law in the absence of a justiciable controversy between the parties (Dkt. #20 at pp. 10–15). Likewise, Mid-American moves for partial summary judgment on its request for declaratory relief, arguing that it is entitled to a declaration that it owns the Account, that Mr. Tian is Mid-American's sole authorized representative, and that Truist must follow Mr. Tian's instructions concerning the Account (Dkt. #23 at pp. 11–17). The Court considers each argument in turn.

### I. Mid-American's UCC Claim

Under Texas law, the Uniform Commercial Code (the "UCC") governs the relationship between banks and their customers. *See* TEX. BUS. & COM. CODE ANN. §§ 4.101–504; *Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128, 133 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (noting that the UCC "regulates a bank's relationship with its Texas customers"). Often, a bank-customer relationship is also governed in part by contractual agreements, such as a commercial bank services agreement. *See, e.g.*, *Contractors Source, Inc.*, 462 S.W.3d at 133.

Article 4 of the UCC creates a liability scheme, under which banks are liable to their customer for losses stemming from unauthorized transactions. *Am. Airlines Emps. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 95 (Tex. 2000). Section 4.401(a) states that "[a] bank may charge against the account of a customer an item that is properly payable from that account." TEX. BUS.

& COMM. CODE ANN. § 4.401(a). "An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank." *Id.* When a bank makes an unauthorized payment, § 4.401 is the "source of the customer's substantive right to recover." *Compass Bank v. Calleja-Ahedo*, 569 S.W.3d 104, 108–09 (Tex. 2018) (quoting *Martin*, 29 S.W.3d at 91).

Truist argues that summary judgment is proper on Mid-American's § 4.401 claim because all transactions in the Account were "properly payable" under the statute. The Court agrees.

Truist points to uncontroverted evidence in the record, which establishes that, at the time that she opened the Account, Ms. Heironimus had actual authority to "open one or more bank accounts in [Mid-American's] name" by virtue the authority granted to her as an officer of Mid-American (Dkt. #20, Exhibit 11 at p. 26). Indeed, Mid-American's board of directors specifically authorized Ms. Heironimus to conduct business on the company's behalf and to enter it into banking relationships as necessary (Dkt. #20, Exhibit 11 at p. 26).

Although determining the scope of a corporate officer's authority often presents questions of fact, courts may assess authority as a pure question of law when the facts are "uncontroverted or otherwise established." *Ross v. Tex. One P'ship*, 796 S.W.2d 206, 210 (Tex. App.—Dallas 1990, writ denied) (citing *Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 539 (5th Cir. 1987) (applying Texas law)). Here, the facts establishing Ms. Heironimus's authority are uncontroverted. A corporate officer derives actual authority expressly from the company's certificate of formation, its bylaws, or resolutions of the board of directors. *Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 630 (Tex. App.—Dallas 2020, no pet.). It is beyond dispute that the unanimous written consent signed by Mid-American's board of directors granted Ms. Heironimus the authority to open bank accounts on Mid-American's

8

behalf. That same consent also made clear that, as a duly elected officer, Ms. Heironimus held her authority until her "death, resignation, retirement or removal" (Dkt. #20, Exhibit 11 at p. 26).

Rather than disputing these facts, Mid-American dismisses them as "irrelevant" (Dkt. #26 at pp. 8–9). The Court disagrees with that characterization. Indeed, as Mid-American acknowledges, it did not remove Ms. Heironimus as an officer or revoke her authority until July 7, 2021 (Dkt. #23 at p. 8; Dkt. #26, Exhibit 1 at p. 10). Thus, all transactions made in the Account before that date were "properly payable" under § 4.401(a) because they were authorized by Mid-American. This is true even for the transactions made after Mid-American sent Truist its letter disputing Ms. Heironimus's authority in June 2020 because, at that time, Ms. Heironimus was still an officer of Mid-American and the CBSA gave Truist the right to "continue to rely on the signature cards, resolutions, and other account documents in [its] possession" (Dkt. #20, Exhibit 7 at p. 12). Moreover, the record establishes that no transactions were made in the Account after Mid-American removed Ms. Heironimus as an officer in July 2021 (Dkt. #20, Exhibit 5 at pp. 78–87).[2]

In short, Truist has established there is no genuine dispute of material fact that Ms. Heironimus was explicitly authorized to open the Account and that every transaction made in the Account was "properly payable"—that is, each transaction was authorized by Mid-American and made in accordance with the CBSA. *See* TEX. BUS. & COMM. CODE ANN. § 4.401(a). For these reasons, Mid-American's § 4.401 claim fails as a matter of law and Truist is entitled to summary judgment. FED. R. CIV. P. 56(a).

---

[2] Mid-American asserts that Truist continued to disburse funds from the Account after Mid-American notified it of Ms. Heironimus's removal in August 2021 (Dkt. #26 ¶ 7). Truist cites no factual support for this assertion, other than an affidavit that makes the vague statement that Truist did not comply with Mid-American's instructions in August 2021 (Dkt. #26, Exhibit 3 ¶ 5). Without any factual support, this assertion does not create a genuine issue of material fact. *E.g., Vais Arms, Inc. v. Vais*, 383 F.3d 287, 293–94 (5th Cir. 2004) (holding that a nonmovant's "conclus[ory]," "vague, self-serving statements" were insufficient to preclude summary judgment).

## II. Declaratory Judgment

Both parties seek summary judgment on Mid-American's request for a declaratory judgment. As a threshold matter, the federal Declaratory Judgment Act applies here. "When a declaratory judgment action filed in state court is removed to federal court, the federal court does not apply the Texas Declaratory Judgment Act." *Collins v. Nat'l Football League*, 566 F. Supp. 3d 586, 602–03 (E.D. Tex. 2021). Instead, courts analyze claims under the federal Declaratory Judgment Act as the claim is "in effect, converted into one brought under the federal Act." *Id.* (internal quotations omitted).

The federal Declaratory Judgment Act is merely a procedural device that creates no standalone cause of action. *Id.* Rather, the viability of a party's request for declaratory relief is dependent on that party's ability to assert a viable substantive cause of action. *E.g.*, *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) ("[I]t is the underlying cause of action . . . that is actually litigated in a declaratory judgment action."). This means that, when a party's underlying cause of action fails as a matter of law, its claim for declaratory relief necessarily fails as well. *See, e.g.*, *Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217–18 (5th Cir. 2015) ("When the other claims have been dismissed, it is appropriate also to dismiss any declaratory judgment request.").

The Court has already determined that Truist is entitled to summary judgment on Mid-American's underlying claim under § 4.401. Thus, Truist is entitled to summary judgment on Mid-American's claim for declaratory judgment as well. *Payne v. Wells Fargo Bank Nat. Ass'n*, 637 F. App'x 833, 838 (5th Cir. 2016) (affirming grant of summary judgment on plaintiff's claim for declaratory judgment because district court had properly granted summary judgment on plaintiff's underlying causes of action).

### III. Attorney's Fees

Truist also seeks to recover its attorney's fees and costs (Dkt. #20 at p. 15). Its basis for this request is a provision in the CBSA indicating that attorney's fees may be available in the event of a dispute between Mid-American and Truist. Mid-American opposes this request by arguing that the CBSA's fee provision is ambiguous (Dkt. #26 at p. 18). Neither party has addressed the availability of attorney's fees and costs in detail, and Truist has not submitted any evidence of the final figure that it believes it is entitled to recover. As a result, the Court will refrain from ruling on this issue at this time and direct the parties to submit additional briefing on attorney's fees and costs.

### CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #20) is hereby **GRANTED**.

It is further **ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. #23) is hereby **DENIED**.

It is further **ORDERED** that Plaintiff's claims against Defendant Truist Bank d/b/a BB&T are dismissed with prejudice.

It is further **ORDERED** that Defendant may file additional briefing regarding its entitlement to attorney's fees and costs in accordance with this Order no later than no later than fourteen (14) days from the date of this Order.

**IT IS SO ORDERED.**
SIGNED this 8th day of March, 2023.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

11